**Harold KATZ and Ruth Katz, Appellants,**

v.

**AETNA CASUALTY & SURETY COMPANY.**

No. 91–1498.

United States Court of Appeals, Third Circuit.

Argued Dec. 10, 1991.

Decided Aug. 6, 1992.

Edwin P. Smith (argued), Smith, McEldrew & Levenberg, Philadelphia, Pa., for appellants.

Warren L. Simpson, Jr. (argued), Rawle & Henderson, Philadelphia, Pa., for appellee.

Before: SCIRICA, ALITO and SEITZ, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

In this diversity case, Harold and Ruth Katz allege that the Aetna Casualty and Surety Company intentionally concealed the existence of a liability policy issued by another insurance company, and that this concealment constituted a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and common law fraud. The district court granted summary judgment for Aetna. We will affirm in part and reverse in part.

## I.

Appellant Harold Katz was a passenger in a car being driven by Phyllis Appelbaum when an unknown motorist ran the car off the road. Katz was injured, and brought a negligence action against Appelbaum in the Philadelphia County Court of Common Pleas. At the time of the accident, Appelbaum owned two insurance policies: Aetna provided $100,000 in liability coverage and $100,000 in uninsured/underinsured ("UIM") coverage, while Allstate Insurance Company provided $1,000,000 in excess liability coverage. The Katzes had $600,000 in UIM coverage from Hartford Insurance Company.

During pre-trial preparation, the Katzes' attorney specifically asked an Aetna claims officer whether Appelbaum had excess coverage. The claims officer denied such coverage existed.[1] The Katzes then settled their claims against Appelbaum for the $100,000 liability limit of the Aetna policy, and the state action was closed.

The Katzes also sought UIM benefits from both Aetna and Hartford. These insurers agreed to joint arbitration in which Aetna's UIM coverage would be exhausted

first. After two days of arbitration, Aetna told the Katzes about Appelbaum's $1,000,000 excess liability coverage from Allstate. The arbitration adjourned to allow the Katzes to reopen their state suit against Allstate.[2]

After discovery and briefing, the common pleas judge granted the Katzes' petition to reopen the state suit, finding that: (1) Appelbaum notified Allstate one or two days after the accident, (2) Allstate knew of the Katzes' claim, (3) neither the Katzes nor their attorney knew of the Allstate policy when they settled with Aetna, (4) Allstate knew that the Katzes' attorney did not know of the Allstate policy, (5) Appelbaum knew that the Katzes neither knew nor had reason to know of the Allstate policy, and (6) Aetna knew of the Allstate policy.

The Katzes then filed this action in state court, claiming that Appelbaum, Aetna, and Allstate willfully, intentionally, and fraudulently concealed the Allstate policy and caused financial and emotional harm. Appelbaum and Allstate soon settled, and Aetna—the only remaining defendant—removed the suit to federal district court. Aetna then moved for summary judgment. Construing the Katzes' complaint to assert a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the CPL") and a common law claim for fraud and deceit,[3] the district court ruled the Katzes had no standing to sue under the CPL, and their common law claim was preempted by the Unfair Insurance Practices Act ("the UIPA"). This appeal followed.[4]

## II.

In this appeal, the Katzes contend that summary judgment for Aetna was inappropriate because (1) they have standing under

---

1. At her deposition, the claims officer denied being asked about additional coverage. For purposes of deciding the motion for summary judgment, however, the district court credited the Katzes' evidence.

2. The Katzes eventually prevailed in arbitration.

3. The Katzes do not dispute the district court's characterization of their claims.

4. Appellate jurisdiction is provided by 28 U.S.C. § 1291 (1988).

the CPL and (2) their common law fraud claim is viable apart from the UIPA.[5]

## A. CPL Claim

■ The Pennsylvania Unfair Trade Practices and Consumer Protection Law provides a private cause of action to "[a]ny person who *purchases or leases* goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" elsewhere in the statute. Pa.Stat.Ann. tit. 73, § 201–9.2(a) (Purdon Supp.1992) (emphasis added). The district court held that because the Katzes did not purchase the Aetna policy, they lacked standing to bring suit under the CPL. Nevertheless, the Katzes contend that they may still sue under the statute if they can prove that they were the intended beneficiaries of the policy.[6] We disagree.[7]

As we have noted, the statute unambiguously permits only persons who have purchased or leased goods or services to sue. Pa.Stat.Ann. tit. 73, § 201–9.2(a) (Purdon Supp.1992).[8] The private cause of action is also limited to unfair or deceptive methods, acts, or practices in the conduct of any "trade or commerce," § 201–3, which is defined as "the advertising, offering for sale, sale or distribution of any services and any property." *Id.* § 201–2. Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so.[9]

The Pennsylvania Supreme Court has never addressed the issue before us. Its only reported decision on the CPL supports the conclusion that a private plaintiff must at least have purchased or leased goods or services. In *Commonwealth v. Monumental Properties, Inc.*, 459 Pa. 450, 329 A.2d 812 (1974), the Commonwealth of Pennsylvania alleged that certain landlords violated the CPL by using form leases that employed archaic and technical language,

---

5. We exercise plenary review of the district court's grant of summary judgment. Summary judgment is appropriate if the moving party demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Although all factual issues must, for purposes of a motion for summary judgment, be decided in favor of the non-moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

6. Although Aetna contends that this argument was not raised in the district court, we are unable to verify this assertion. Neither Aetna's motion for summary judgment nor the Katzes' answer to the motion contains legal argument. The record does not reveal whether oral argument was heard.

7. Our task is to predict how the Pennsylvania Supreme Court would decide this case. The

decisions of Pennsylvania's intermediate appellate courts, while not controlling, indicate how the Pennsylvania Supreme Court might decide the issue. *Mazur v. Merck & Co.*, 964 F.2d 1348, 1353 (3d Cir.1992).

8. The relevant section of the CPL provides:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [elsewhere in the statute] may bring a private action, to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper.

Pa.Stat.Ann. tit. 73, § 201–9.2(a) (Purdon Supp. 1992).

9. At least three state trial courts have reached the same conclusion. *Lauer v. McKean Corp.*, 2 D. & C.4th 394, 395–97 (C.P. Allegheny County 1989); *Edkin v. The Travelers Cos.*, 3 D. & C.4th 557, 559–60 (C.P. Lycoming County 1988); *Bonacci v. S.O.U.L.*, 11 D. & C.3d 259, 262 (C.P. Philadelphia County 1979).

included unfair and deceptive provisions, and omitted certain notices to tenants. The Pennsylvania Supreme Court held that even though the CPL did not, at that time, specifically mention leases,[10] the statute covered unfair and deceptive practices related to the leasing of residential housing. The CPL, commented the court, was enacted to "place on more equal terms seller and consumer," to remedy "the unequal bargaining power of opposing forces in the marketplace," and to "ensure the fairness of market transactions." *Id.* at 816. The court also commented that the statute was "designed to equalize the market position and strength of the consumer vis-a-vis the seller." *Id.*

The Katzes conducted no transaction with Aetna that could fall under the CPL. They did not purchase or lease goods or services from Aetna or Appelbaum, § 201–9.2, or otherwise exchange consideration, nor were they the victims of unequal bargaining power. There was no commercial bargaining or exchange.

The Katzes, however, contend that the reasoning in *Valley Forge Towers S. Condominium v. Ron–Ike Foam Insulators, Inc.*, 393 Pa.Super. 339, 574 A.2d 641 (1990), *aff'd without opinion*, 529 Pa. 512, 605 A.2d 798 (Pa.1992) (per curiam), supports their position. This contention is mistaken. In *Valley Forge Towers*, Ron–Ike Foam Insulators contracted to sell a roofing membrane manufactured by Mameco to a condominium association. The contract obligated Ron–Ike to install the roofing membrane, and stated that Mameco would provide the association with a ten-year warranty. Mameco manufactured the roof according to specifications in the contract between Ron–Ike and the association. Ron–Ike installed the roof and Mameco issued the warranty directly to the association, but two years later the roof began to leak. After trying unsuccessfully to get the roof repaired, the association sued both Ron–Ike and Mameco for breach of express and implied warranties, and for violation of the

CPL. In preliminary objections, Mameco asserted that the association was not a "purchaser" under the CPL because it had not bought the roof from Mameco. The trial court agreed, holding that the association could not be a "purchaser" unless it were in strict privity with Mameco.

The Pennsylvania Superior Court reversed, holding that liability under the CPL extended to "those in privity, those specifically intended to rely upon the fraudulent conduct, and those whose reasonable reliance was specially foreseeable." 574 A.2d at 647. In light of this, the court held that the association's "purchase of the roof from Ron–Ike, which was warranted directly by Mameco, was a 'purchase' giving rise to liability on the part of Mameco ... for failure to honor its warranty, notwithstanding the absence of direct privity." *Id.* The statute, noted the court, was silent on the issue of privity. Although a claimant must be a person who makes a purchase for personal, family, or household purposes and suffers an ascertainable loss, there was no "express requirement that there be strict technical privity between the party suing and the party sued." *Id.* at 645. The court then turned to principles of statutory construction to help decide whether privity was an element of the statutory cause of action.

The legislative history of the CPL revealed its purpose was to "substantially enhance" the remedies available to consumers in cases of unfair or deceptive business practices. *Id.* at 646. In the court's view, this weighed heavily against any requirement that would "hinder the act's remedial effects, or provide a simple expedient for evasion of its force." *Id.* The court then noted that the privity defense had been eroded to the point where a third party plaintiff could sue a contractor for fraud when the plaintiff was "specifically intended" to rely on that conduct or when the reasonable reliance of such a third party was "specially foreseeable." *Id.* (citing

---

10. Then, as now, leasing was not expressly included in the general definition of "any trade or commerce." Pa.Stat.Ann. tit. 73, § 201–2 (Purdon 1971). When the state legislature created the private cause of action in 1976, it amended the statute to include leasing. Pa.Stat.Ann. tit. 73, § 201–9.2 (Purdon Supp.1992).

*Woodward v. Dietrich,* 378 Pa.Super. 111, 548 A.2d 301 (1988)). This was true even under common law, at least in construction cases. *Id.* Finally, the court explained that if it were to require strict privity, disreputable contractors would be able to evade liability, leaving their reputable counterparts to pay outstanding judgments. *Id.* at 646–47.

The Katzes argue that a plaintiff who has not purchased or leased goods or services may nevertheless sue under the CPL if he was specifically intended to rely on a defendant's conduct and his reasonable reliance was specifically foreseeable to the defendant. We disagree. Although *Valley Forge Towers* held that strict privity is not always an element of the private cause of action, there is no indication that the court would have extended the private cause of action to a plaintiff lacking any commercial dealings with the defendant. Indeed, the plaintiff condominium association contracted to buy a Mameco roof from Ron–Ike, and Mameco followed specifications set forth in that contract and sent the plaintiff a warranty directly. Here, the Katzes conducted no business whatsoever with either Appelbaum or Aetna. Aetna's alleged deceit did not induce the Katzes to buy or conduct some other market transaction. For these reasons, the Katzes are not "purchasers" for purposes of the CPL. We will affirm the district court's grant of summary judgment on this claim.

### B. *Common Law Claim*

■ The district court interpreted the complaint to allege that Aetna committed common law fraud and deceit, but held that no such claim exists outside of the Pennsylvania Unfair Insurance Practices Act.[11] In reaching its conclusion, the district court relied on *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981), where the Pennsylvania Supreme Court held that the UIPA barred a suit for damages allegedly caused by an insurer's "bad faith." In a plurality

opinion, Justice Roberts, joined by Justices Kauffman and Wilkinson, wrote that the UIPA already encompassed this action. He commented that:

> There is no evidence to suggest, and we have no reason to believe, that the system of sanctions established under the [UIPA] must be supplemented by a judicially created cause of action....
>
> ....
>
> ... Surely it is for the Legislature to announce and implement the Commonwealth's public policy governing the regulation of insurance carriers. In our view, it is equally for the Legislature to determine whether sanctions beyond those created under the Act are required to deter conduct which is less than scrupulous.

*Id.* at 970. The district court interpreted this language to mean that the UIPA preempted any cause of action beyond those specifically outlined in the statute. In our view, *D'Ambrosio* is not so far-reaching.

The two dissenting justices argued that the UIPA did not preempt the new "bad faith" cause of action because there was no evidence the state legislature intended to limit remedies available to insureds, and no evidence to support the majority's assertion that the statute adequately deters bad faith conduct. 431 A.2d at 973 (Larsen, J., dissenting). The dissent intimated that the majority had reversed an earlier precedent that held that a predecessor to the UIPA did not preclude individual causes of action. *Id.* (citing *Dozor Agency, Inc. v. Rosenberg,* 403 Pa. 237, 169 A.2d 771 (1961), which interpreted the Unfair Insurance Practices Act of 1947). Justice Nix, the fourth justice to "join" the plurality opinion, 431 A.2d at 973, pointed out that the court was not holding that the UIPA preempted all other causes of action. Rather,

> [i]n addition to the deterrent provisions of the [UIPA], appellant was also in a

---

11. The UIPA prohibits persons from engaging in "any trade practice which is defined or determined to be an unfair method of competition or an unfair or deceptive act or practice in the

business of insurance." Pa.Stat.Ann. tit. 40, § 1171.4 (Purdon 1992). The statute defines prohibited conduct in great detail. *Id.* § 1171.5.

position to seek relief under a theory of breach of contract, or by pursuing *the common law of deceit.* I do not accept the dissent's implicit premise that these existent remedies are inadequate to make appellant whole.

*Id.* at 973–74 (citations omitted) (emphasis added). Justice Nix's holding represents the controlling view under Pennsylvania law. *Borman v. Raymark Indus., Inc.,* 960 F.2d 327, 333 (3d Cir.1992). *Cf. Planned Parenthood of Southeastern Pennsylvania v. Casey,* 947 F.2d 682, 693 (3d Cir.1991) (the controlling opinion in a splintered decision is that of the United States Supreme Court Justice or Justices concurring on the narrowest grounds), *aff'd,* — U.S. —, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Therefore, common law fraud and deceit actions survived enactment of the UIPA.

Our conclusion that these common law actions are not preempted is supported by recent decisions by the Pennsylvania Superior Court. In *Pekular v. Eich,* 355 Pa.Super. 276, 513 A.2d 427 (1986), *appeal denied,* 516 Pa. 635, 533 A.2d 93 (1987), the Pennsylvania Superior Court not only followed Justice Nix's *D'Ambrosio* holding, 513 A.2d at 430–31, but found two additional reasons to permit common law actions to go forward. The court pointed out that the Pennsylvania Statutory Construction Act of 1974 provides that "[t]he provision in any statute for a penalty or forfeiture for its violation shall not be construed to deprive an injured person of the right to recover from the offender damages sustained by reason of the violation of such statute." *Id.* at 430 (quoting 1 Pa.Cons. Stat.Ann. § 1929 (Purdon Supp.1992)). The court also noted that the Pennsylvania Supreme Court has held that the Unfair Practices Act of 1947—the UIPA's direct ancestor—did not provide the exclusive remedy for fraudulent conduct by insurers. *Id.* (citing *Dozor Agency, Inc. v. Rosenberg,* 403 Pa. 237, 169 A.2d 771 (1961)). Like its predecessor, the UIPA declares that the powers vested in the Insurance Commis-

sioner by the statute "are additional to any other powers to enforce any penalties, fines or forfeitures authorized by law with respect to the methods, acts and practices declared to be unfair and deceptive." Pa. Stat.Ann. tit. 40, § 1171.13 (Purdon 1992). If this language "removed any doubt" that the Unfair Practices Act of 1947 did not preempt common law actions, 169 A.2d at 774, then the UIPA could not do the same. *Id.* at 430. We find this reasoning convincing, and conclude that neither the UIPA nor *D'Ambrosio* bars common law fraud and deceit actions. *Accord Wright v. North Am. Life Assurance Co.,* 372 Pa.Super. 272, 539 A.2d 434 (1988) (unfair and deceptive acts covered by the UIPA may also be remedied under the CPL); *Hardy v. Pennock Ins. Agency, Inc.,* 365 Pa.Super. 206, 529 A.2d 471, 479 (1987) (same). *See also Brownell v. State Farm Mut. Ins. Co.,* 757 F.Supp. 526, 531–32 (E.D.Pa.1991) (same).

Aetna, however, argues that the Katzes assert a claim for bad faith, which would be prohibited under *D'Ambrosio,*[12] not one for fraud and deceit. A fair reading of the complaint does not support this interpretation. The Katzes do not claim that Aetna breached a contractual duty to defend or indemnify, or a contractual duty of good faith and fair dealing. *See* Barry R. Ostrager and Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 10.01 at 351 (4th ed. 1991). Rather, they allege that Aetna willfully and intentionally deceived them about Appelbaum's insurance coverage. *See* Complaint ¶ 9 (accusing Aetna of "fraudulently concealing" certain knowledge from plaintiffs), ¶ 12 (alleging that Aetna "fraudulently represented that it had received a general release"), ¶ 13 (alleging that "Aetna continued to fraudulently represent to plaintiffs that all liability insurance ... had been exhausted by settlement"), and ¶ 15 (referring to "fraudulent concealment and misrepresentation"). Moreover, the Katzes specifically disavowed any bad faith claim in their reply

---

**12.** Because the Katzes have not alleged wrongful conduct occurring after the effective date of 42 Pa.Cons.Stat.Ann. § 8371 (Purdon Supp. 1992) (effective July 1, 1990), we need not decide whether this statute provides an independent bad faith cause of action.

brief and at oral argument. Summary judgment on this claim was improper.[13]

### III.

For the foregoing reasons, we will affirm the district court's grant of summary judgment for Aetna on the CPL claim, but will reverse and remand on the common law fraud and deceit claim.

---

**13.** The Katzes also appeal the district court's denial of their cross-motion for summary judgment. Generally, such a denial is not appealable. *Forsyth v. Kleindienst,* 599 F.2d 1203, 1207 (3d Cir.1979), *cert. denied sub nom., Mitchell v. Forsyth,* 453 U.S. 913, 101 S.Ct. 3147, 69 L.Ed.2d 997 (1981). Because the Katzes have not shown how the district court's order "falls within one of the narrow exceptions to the prohibition against piecemeal appeals," 10 Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2715 at 638 (1983), we have no jurisdiction to consider the issues raised in Part III of their opening brief.