Danean SEASOR;  Latesha Coney;
and Janeice Coney

v.

LIBERTY MUTUAL INSURANCE CO.

Civil Action No. 94–4013.

United States District Court,
E.D. Pennsylvania.

Aug. 29, 1996.

James D. Rosen, Rosen and Schafer, P.C., Philadelphia, PA, for Plaintiffs.

Terance P. Kennedy and Robert J. McDade, Kelly, McLaughlin & Foster, Philadelphia, PA, for Defendant.

## MEMORANDUM

BRODERICK, District Judge.

Before the Court in this action brought pursuant to Pennsylvania's Bad Faith statute, 42 Pa.C.S.A. § 8371, and Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 P.S. § 201-1, *et seq.*, is defendant Liberty Mutual Insurance Co.'s ("Liberty Mutual") motion for summary judgment and Plaintiffs' response thereto. Subject matter jurisdiction is based on diversity of citizenship. The parties agree that Pennsylvania law controls the determination of this action. The issue before the Court is whether Plaintiffs, who were injured in an accident involving a rental vehicle in which they were passengers, can bring a claim for bad faith pursuant to 42 Pa.C.S.A. § 8371 and a claim under the CPL against Liberty Mutual. Because the Court has determined that Plaintiffs are not "insureds" under the Liberty Mutual insurance policy and that this policy prohibits an assignment of its "insured" Bessie Covington's right to bring claims against Liberty Mutual for bad faith and for violations of the CPL, defendant's motion for summary judgment will be granted.

### I. Background

Plaintiffs Danean Seasor, Latesha Coney and Janeice Coney ("Plaintiffs) were three of nineteen passengers in a rented Ford vehicle, which, on or about August 5, 1991, was involved in an accident in Gilford County, North Carolina. All nineteen passengers were injured. Bessie Covington, who had rented the vehicle from Marple Ford Leasing on August 2, 1991, was driving at the time of the accident. The rental agreement shows that only Bessie Covington and Reginald Covington were authorized to drive the rental vehicle.

The vehicle was insured under an automobile liability policy issued by Liberty Mutual Insurance Company ("Policy") to its named insureds—Marple Ford Leasing, Ford Rent-A-Car System and Lincoln–Mercury Car Rental System. The policy, effective October 1, 1990 to October 1, 1991, provided liability coverage in the amount of $100,000.00 per person/$300,000.00 per accident. The policy also contains an endorsement entitled "Pennsylvania Basic First Party Benefit" (the "Endorsement") which provides medical expense benefits in the amount of $5,000.00 per insured, as mandated by Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1701, *et seq.*

In the Section II of the Policy—Liability Coverage—"insured" is defined as follows:

### 1. WHO IS AN INSURED

The following are **insureds**:

**a.** You [the named insured] for any covered **auto.**

**b.** Anyone else while using with [the named insured's] permission a covered **auto** you own, hire or borrow ...

Both parties agree that Bessie Covington is an "insured" under the definition provided in Section II of the Policy. Bessie Covington rented the vehicle in her name and was authorized to drive the vehicle. The parties dispute, however, whether Plaintiffs, as passengers in the rental vehicle, are "insureds" under the definition contained in Section II of the Policy. The Court will address this issue in more detail below. In the Endorsement, the definition of insured includes "any person while occupying a covered auto." Because Plaintiffs were passengers in the vehicle, they qualified as "insureds" under the Endorsement for the purpose of receiving first-party medical benefits. There is no dispute that Plaintiffs received these benefits.

Liberty Mutual settled the liability claims against Bessie Covington for the personal injuries of all the passengers in the vehicle except these three Plaintiffs. The settlement of these personal injury claims exhausted the policy proceeds—Liberty Mutual distributed $299,999.00 of the $300,000.00 available under the Policy to sixteen of the nineteen injured passengers. Thereafter, Plaintiffs instituted a negligence action against Bessie Covington in the Court of Common Pleas of Philadelphia County. Liberty Mutual accepted the defense of Bessie Covington in the state court action, and after a three day trial, a jury returned a verdict in favor of the three Plaintiffs in the amount of $84,000.00. After the verdict was entered as a judgment against Bessie Covington, Plaintiffs began pursuing an assignment of rights from Bessie Covington. On or about March 21, 1996, during the pendency of the instant action, Bessie Covington granted an assignment to Plaintiffs.

The crux of Plaintiffs' complaint in the instant action, brought on June 29, 1994, is that Liberty Mutual's failure to include them in the settlement of the liability claims against Bessie Covington constituted bad faith. Plaintiffs maintain that they notified Liberty Mutual as to their intention to present personal injury claims against Bessie Covington, and that Liberty Mutual excluded them from the settlement. As set forth above, Plaintiffs received first-party medical benefits. Their allegations of bad faith are limited to Liberty Mutual's alleged conduct investigating and settling the liability claims made against Bessie Covington. Liberty Mutual contends, on the other hand, that as part of their claims investigation, it contacted Plaintiffs inviting them to submit liability claims but received no response.

In their motion for summary judgment, Liberty Mutual contends that Plaintiffs are not "insureds" under the Policy and, therefore, cannot bring a bad faith claim against it pursuant to 42 Pa.C.S.A. § 8371. Liberty Mutual contends that Plaintiffs also cannot bring a claim against it under the CPL because the CPL only provides a private right of action to purchasing consumers of insurance policies. Liberty Mutual maintains that the assignment Plaintiffs obtained from Bessie Covington is invalid under the Policy's nonassignment provision. Plaintiffs maintain that they are "insureds" under the Policy and that the assignment they obtained from Bessie Covington, Liberty Mutual's "insured", permits them to bring this bad faith action.

## II. Discussion

*A. Plaintiffs are not "Insureds" for the purpose of bringing a Bad Faith Action Pursuant to 42 Pa.C.S.A. § 8371*

Plaintiffs assert that they are "insureds" under the Policy. Pennsylvania law makes clear that the insurer's duty to act in good faith belongs to those persons who qualify as "insureds" under the policy. *See Dercoli v. Pennsylvania National Mutual Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989). Pennsylvania's bad faith statute provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all the following actions:

(1) Award interest on the amount of the claim from the date the claim was made ...

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. In holding that a liability claimant could not bring a cause of action for bad faith pursuant to 42 Pa.C.S.A. § 8371, the Pennsylvania Superior Court in *Strutz v. State Farm Mutual Ins. Co.*, 415 Pa.Super. 371, 609 A.2d 569 (1992), *allocatur denied*, 532 Pa. 657, 615 A.2d 1313 (1992), stated:

> [T]he duty to negotiate a settlement in good faith arises from the insurance policy and is owed to the insured, not to a third-party claimant. By asserting its policy right to handle all claims, the insurer assumes a fiduciary position toward the *insured* and becomes liable to act in good faith and with due care in representing the interests of the insured.

*Id.* 609 A.2d at 571 (emphasis added). Likewise, in the well-reasoned decision *Klinger v. State Farm*, 895 F.Supp. 709 (M.D.Pa.1995), Judge Caldwell made clear that in order to bring an action for bad faith against an insurer, one must qualify as an "insured" as that term is defined in the policy.

Consistent with the above Pennsylvania cases, the Court must next determine whether Plaintiffs are "insureds" under the liability coverage section of the Policy. This requires the Court to construe the definition of "insured" set forth in the liability coverage section of the policy:

### 1. WHO IS AN INSURED

The following are **insureds**:

**a.** You [the named insured] for any covered **auto.**

**b.** Anyone else while using with [the named insured's] permission a covered **auto** you own, hire or borrow . .

As heretofore pointed out, the named insureds are Marple Ford Leasing, Ford Rent–A–Car System and Lincoln–Mercury Car Rental System. Because Bessie Covington rented the vehicle from Marple Ford and was authorized to drive the vehicle, she qualifies as an "insured" under the above-quoted definition "[a]nyone else while using with [Marple Ford, Ford Rent–A–Car System and Lincoln–Mercury Car Rental System] permission a covered auto" the named insured owns or hires. The issue the Court must determine is whether Plaintiffs, as passengers in the vehicle, also qualify as "insureds" under this provision.

It is well-settled that the task of interpreting a contract is generally performed by a court. The objective is to ascertain the intent of the parties as manifested by the language of the written instrument. Where a provision of the policy is ambiguous, the provision is to be construed in favor of the insured and against the insurer, but where the language of the policy is clear and unambiguous, a court is required to give effect to that language. *Pacific Indemnity Co. v. Linn*, 766 F.2d 754, 760–761 (3d Cir. 1985); *Standard Venetian Blind Co. v. American Empire Ins.*, 503 Pa. 300, 469 A.2d 563, 566 (1983). Determining whether the terms of a policy are ambiguous is a question of law for the Court. In making this determination, "[t]he language of the policy may not be tortured to create ambiguities where none exist." *Pacific Indemnity*, 766 F.2d at 761. The Court has determined that the phrase "anyone else while using [with the named insured's] permission" is unambiguous. It is obvious that Plaintiffs do not qualify as "insureds" under the Liability Coverage section of the Policy, and Plaintiffs' proffer that they were "using" the vehicle is not reasonable as hereinafter discussed.

The phrase "anyone else while using with [the named insured's] permission a covered auto . . ." must be construed in the context of the Policy as a whole. It is clear that Plaintiffs are "insureds" under the Endorsement providing for first-party medical benefits mandated by the MVFRL. Under the Endorsement, the insurer will pay first-party benefits "to or for an **insured** who sustains **bodily injury** caused by an **accident** arising out of the maintenance or use of an **auto.**" In the Endorsement, "insured" is unambiguously defined to include "[a]ny person while *occupying* a covered auto." (emphasis added). Under this definition of "insured", there is no doubt that Plaintiffs as passengers in the vehicle were "occupying" the vehicle at the time of the accident for the purpose of

receiving first-party medical benefits. Therefore, the Policy as a whole creates an obvious distinction between the terms "using with your permission" and the term "occupying", with "occupying" specifically intended to refer to passengers.

The clear intent of the "Liability Coverage" section of the Policy is, moreover, to provide liability insurance to the named insureds—Marple Ford Leasing, Ford Rent-A-Car System and Lincoln–Mercury Car Rental System—and to authorized drivers of the rental vehicle. The Court takes judicial notice of the fact that rental car agencies require disclosure of all persons who will be driving the rental vehicle and generally require insurance for each authorized driver. This procedure makes clear who will be covered for their negligence in the event of an accident.

The rental agreement between Bessie Covington and Marple Ford contained the following statement:

> No drivers under 21 years of age. Only the below named persons are authorized as additional Drivers. If none, print "none" across this section and have signed by customer.

Beneath this statement is typed the name "Reginald Covington" followed by Bessie Covington's signature. None of the passengers in the vehicle, including Plaintiffs, are listed as authorized drivers under the rental contract. In this context, it is clear that the phrase "anyone else while using with your permission" is intended to refer to authorized drivers under the rental agreement. Plaintiffs, therefore, are not "insureds" under Section II of the Policy.

Moreover, the "Liability Coverage" section of the Policy provides that the insurer will pay all sums an *"insured legally must pay as damages* because of **bodily injury or property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **auto."** (emphasis added). This section does not apply to Plaintiffs whose liability for the accident is not at issue and against whom no liability claims have been made. Liberty Mutual was not and is not being asked to defend a liability action against any of the passengers. As passengers injured in the accident, Plaintiffs were entitled to make claims against Bessie Covington, the "insured", under the liability coverage section of the Policy. It would require a great stretch of judicial imagination to conclude that Plaintiffs who brought a negligence action against Bessie Covington, the "insured" under the Policy, should also be considered "insureds" under the liability coverage section of the policy. As pointed out in *Strutz, supra,* an insurer's duty to act in good faith is "owed to the insured" and not to claimants against the "insured".

Plaintiffs' status as "insureds" under the Endorsement for the purpose of receiving first-party medical benefits does not, moreover, deem them "insureds" for the liability coverage section of the Policy. As set forth above, the definition of "insured" in the Endorsement includes "[a]ny person while occupying a covered auto." The definition of "insured" for the purposes of liability coverage includes "anyone else while using with [Marple Ford Leasing, Ford Rent–A–Car System and Lincoln–Mercury Car Rental System's] permission a covered auto...." As heretofore set forth, it is undisputed that Plaintiffs received first-party benefits and that their allegations of bad faith pertain to Liberty Mutual's failure to include them in the settlement of the personal injury claims against Bessie Covington under the liability coverage section of the policy. As such, the only definition of "insured" that is relevant to the determination of whether Plaintiffs can bring this bad faith action is "anyone else while using with [Marple Ford Leasing, Ford Rent–A–Car System and Lincoln–Mercury Car Rental System's] permission a covered auto....", which, as the Court has heretofore determined, does not include Plaintiffs.

The Third Circuit's decision *Gemini Physical Therapy and Rehabilitation v. State Farm,* 40 F.3d 63 (3d Cir.1994) supports this conclusion. *Gemini* addressed the remedies available to claimants who alleged that they were improperly denied *first-party medical benefits* mandated by the MVFRL. The Third Circuit predicted that the Pennsylvania Supreme Court would hold that § 1797 of the MVFRL provided the exclusive remedy

for wrongful denials · of first-party benefits. The Court could find no post-*Gemini* Pennsylvania Supreme Court decision refuting the Third Circuit's position in *Gemini,* and subsequent courts in this district have applied *Gemini* to preclude actions for bad faith denials of first-party medical benefits under 42 Pa.C.S.A. § 8371. *See, e.g., Grevy v. State Farm Ins. Co.,* 1996 W.L. 107851 (E.D.Pa., March 11, 1996) (Reed, J.); *Cohen v. American International Ins. Co.,* 1996 W.L. 103793, at 3–4 (E.D.Pa., March 7, 1996) (Yohn, J.); *Serubo v. Home Ins. Co.,* 1995 W.L. 461274, at 2 (E.D.Pa., August 3, 1995) (Ludwig, J.). Thus, had Plaintiffs alleged improper denial of their first-party medical benefits, they would have been limited to pursuing the remedies available under § 1797 of the MVFRL and would not have been permitted to bring a bad faith action pursuant to 42 Pa.C.S.A. § 8371.

*B.   Assignment*

■    Plaintiffs obtained an assignment of rights from Bessie Covington on or about March 21, 1996. Liberty Mutual contends that the Policy's nonassignment provision, which requires that Liberty Mutual consent to an assignment, invalidates this assignment. The assignment provides:

> Bessie Lee Covington of Lansdale, Pennsylvania hereby agrees, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and intending to be legally bound hereby, does hereby sell, assign, transfer, bargain, convey and deliver to Danean Seasor, Latesha Coney and Janeice Coney of Philadelphia, Pennsylvania ("Buyers"), all her right to an interest in any cause of action she may now or in the future possess against Liberty Mutual Insurance Company arising from a policy of automobile liability insurance which was in effect on August 5, 1991 in which the insured was Marple Ford, Inc. and Bessie Lee Covington, by virtue of the rental by Bessie Lee Covington of a motor vehicle from the said Marple Ford, Inc. which was insured by Liberty Mutual Insurance Company.

> Buyers hereby agree to assume and be bound by all of the covenants, conditions and requirements contained. in the policy of automobile liability insurance described above which is being hereby assigned.

The policy's nonassignment clause provides in relevant part:

**Transfer of Your Rights and Duties Under this Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

The issue is whether the assignment, obtained from Bessie Covington without Liberty Mutual's consent, precludes Plaintiffs from bringing this bad faith action against Liberty Mutual pursuant to 42 Pa.C.S.A. § 8371. The Court has determined that the assignment without Liberty Mutual's consent does preclude Plaintiffs from bringing this action pursuant to 42 Pa.C.S.A. § 8371.

In 1946, the Pennsylvania Supreme Court determined in *National Memorial Services v. Metropolitan Life Ins.,* 355 Pa. 155, 49 A.2d 382 (1946), that because the insured had died, the right to payment had been determined. The Court declared the nonassignment clause void, reasoning that "there seems to be no sound reason for the insurance company to forbid or limit an assignment by a beneficiary of the amount due him or her after the death of the insured." *Id.* 49 A.2d at 383–384.

Two recent Pennsylvania Superior Court cases have ruled on the issue presented in this case by the Plaintiffs' attempts to bring this bad faith action against Liberty Mutual by virtue of having obtained an assignment from Bessie Covington without Liberty Mutual's consent. *Fran and John's Doylestown Auto Center v. Allstate,* 432 Pa.Super. 449, 638 A.2d ·1023 (1994); *High–Tech–Enterprises, Inc. v. Gen'l Accident Ins. Co.,* 430 Pa.Super. 605, 635 A.2d 639 (1993). In both cases,

owners of vehicles damaged in collisions executed documents purporting to assign to automobile repair shops their right to payment from the insurance companies for property damage to their automobiles. The insurance policies at issue contained nonassignment provisions similar to the one at issue here, and neither insured obtained the consent of his insurer prior to the assignment. Finally, in both cases the repair shop later brought an action against the insurer for, among other claims, bad faith pursuant to 42 Pa.C.S.A. § 8371. In each of these cases, the Court specifically ruled that the failure to obtain the insurer's consent to an assignment as specifically required under the policies' nonassignment provisions, prevented the assignee from bringing an action against the insurer for bad faith pursuant to 42 Pa.C.S.A. § 8371. In *High–Tech Enterprises*, Judge Beck wrote:

> It is clear that General Accident's insured … is the true owner of any potential claim for unpaid insurance benefits. The non-assignment language of the insurance policy is clear and unambiguous, and therefore must be applied here. Obviously, the nonassignment clause is designed to protect the insurer from a risk it did not knowingly assume. Without his insurer's written consent, [the insured's] alleged assignment of his contractual rights under the policy never became effective; it was in violation of the express language of the insurance contract.

635 A.2d at 641–642. In *Fran and John's Doylestown Auto,* the Court explained:

> We find the language of this provision to be susceptible of no possible meaning other than to prohibit any transfer without appellee's consent. We are powerless to place upon the language of the policies in question any construction which conflicts with its plain meaning.

638 A.2d at 1025.

In the instant case, Plaintiffs are relying on the assignment obtained from the insured, Bessie Covington, without the consent of Liberty Mutual to pursue a bad faith claim under 42 Pa.C.S.A. § 8371. This Court predicts, on the basis of the two Superior Court cases cited above, and recognizing the Supreme Court of Pennsylvania's position in *National Memorial*, that the Pennsylvania Supreme Court would hold that the bad faith action against Liberty Mutual is a contested matter where no right to payment has accrued, and that Plaintiffs, therefore, have no right to bring this action as assignees of Bessie Covington without obtaining the consent of Liberty Mutual.

*C. Plaintiffs' Right to Bring Claim under Consumer Protection Law*

■ The CPL provides in relevant part:

Any person who purchases or leases goods or services primarily for the personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person or [unfair or deceptive acts or practices] may bring a private action, to recover [damages].

73 P.S. § 201–9.2(a). In *Katz v. Aetna Casualty Co.,* 972 F.2d 53 (3d Cir.1992), the Third Circuit held that a passenger injured in a car accident could not bring a CPL action against the driver's insurance company because the passenger had conducted no business with Aetna and, therefore, was not a "purchaser" for the purpose of bringing a claim under the CPL. *Id.* at 56–57; *see also Gemini, supra.* Likewise, Plaintiffs herein do not have a private right of action under the CPL. Moreover, for the reasons previously set forth, the assignment Plaintiffs obtained from Bessie Covington does not give Plaintiffs the right to bring a CPL action against Liberty Mutual.

Accordingly, the Court will grant summary judgment in favor of defendant as to both the bad faith claim pursuant to 42 Pa.C.S.A. § 8371 and under the CPL on the grounds that Plaintiffs are not insureds under the Policy; are not valid assignees of Bessie Covington's right to bring a bad faith action; and were not purchasing consumers of the insurance policy. An appropriate Order follows.

*ORDER*

AND NOW, this 28th day of August, 1996; for the reasons set forth in this Court's memorandum of August 28, 1996;

IT IS ORDERED: Defendant's motion for summary is GRANTED and judgment is entered in favor of defendant Liberty Mutual Insurance Company against plaintiffs Denean Seasor, Latesha Coney, and Janeice Coney.