DLD-292                                                                    NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-4639
_____

ANNETTE BRANCHE,
                                              Appellant
v.

WELLS FARGO HOME MORTGAGE, INC.
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1:11-cv-00468)
District Judge:  Honorable William W. Caldwell
_____

Submitted for Possible Summary Action
Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
August 6, 2015

Before:  FISHER, SHWARTZ and GREENBERG, Circuit Judges

(Opinion filed: August 12, 2015)
_____

OPINION[*]
_____

PER CURIAM

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Annette Branche appeals pro se and in forma pauperis from the District Court's order granting defendant's motion for summary judgment and denying her motion for summary judgment. Because this appeal does not present a substantial question we will summarily affirm the District Court's order. See 3d Cir. LAR 27.4; 3d Cir. I.O.P. 10.6.

I.

Branche is the administrator of her common law husband's (Charles White's) estate, which includes the house in which Branche resides. Defendant/Appellee Wells Fargo Home Mortgage Inc. ("Wells Fargo") is the mortgage servicer for the house, which is now in the name of Mr. White's estate. The dispute between Branche and Wells Fargo arose out of a botched home renovation. In short, after Branche's first contractor damaged her house, the homeowner's insurance policy provided money for repairs, and Wells Fargo, as the mortgage servicer, was authorized to oversee the repairs and disburse the insurance funds to the contractor. Accordingly, the insurance money was initially distributed to an escrow account held by Wells Fargo.

On December 3, 2008, Wells Fargo sent to the Estate (in care of Branche) a letter describing the procedures for the distribution of the insurance funds for the repairs, which would be released in one-third increments. The first payment would be made after Wells Fargo received, among other things, an estimate and proof of the contractor's licensure. The second payment would be made after the work was fifty percent complete. The final payment was to be released after the work was fully completed, as evidenced by a certified statement and final inspection. Branche selected a contractor whose estimate for the work was $29,800, well over the amount of the insurance funds. Although Branche

2

informed the contractor that the payment would be disbursed through an insurance policy, she did not explain the payment process.

Wells Fargo released the first payment ($6,497.30), six days after receiving the required contractor documentation. The second disbursement ($6,497.31) was released on January 9, 2009, one day after the work was certified as fifty percent complete. Branche's contractor stopped work after becoming dissatisfied with the timing of the payments, and she hired a new contractor to finish the project for an estimated cost of $18,200.

Thereafter, Wells Fargo released a payment in the amount of $10,400. And in May 2010, after Branche certified that the repairs were complete, Wells Fargo released the final disbursement. In total, Wells Fargo released approximately $29,000 for the work.[1] Branche still owes the final contractor $5,542.11, and she states that the first contractor is owed approximately $2,500.

Branche filed a lawsuit in state court against the contractors, the insurance company, and Wells Fargo. The lawsuit was removed to the District Court on the basis of Branche's apparent attempt to assert federal claims. Ultimately, in light of rulings not at issue here and Branche's decision to drop her claims against certain defendants, she proceeded only on claims for breach of contract and deceptive trade practices against Wells Fargo. Branche asserted that Wells Fargo failed to timely pay the contractors, violated an implied contractual obligation to allow her to safely occupy her home,

---

[1] The insurance company had periodically adjusted the claim upwards from the initial amount it agreed to cover.

violated the duty of good faith, and engaged in deceptive practices and fraudulent behavior.

The parties filed cross-motions for summary judgment, and on November 6, 2013, the District Court entered judgment on behalf of Wells Fargo and against Branche. It determined that Wells Fargo abided by its obligation to disburse the insurance proceeds to the contractors as delineated by the December 3, 2008 letter. The District Court explained that Branche conceded that she understood the disbursement protocol but that she did not explain it to her contractor, and that it was not Wells Fargo's fault that Branche's contractors were unsatisfied with the payment schedule. Further, Wells Fargo was required only to disburse the amount of the insurance proceeds. It was not obligated to provide payment for the total amount of the work.

As to Branche's assertion that Wells Fargo breached an obligation to ensure that she could safely occupy her house—which Branche stated was akin to a landlord's obligation to his or her renter—the District Court determined that Wells Fargo had no such obligation. The District Court also concluded that Wells Fargo did not violate its duty of good faith and fair dealing, as it complied with Branche's reasonable expectations in disbursing the insurance proceeds, and Branche testified that she understood the disbursement process.

The District Court then determined that Branche lacked standing to proceed on her claim against Wells Fargo under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. § 201-9.2(a). The District Court agreed with Wells Fargo that, because Mr. White had been the borrower, Branche herself

4

was not a "purchaser" permitted to bring a lawsuit under the UTPCPL. The District Court also determined that the December 3, 2008 letter was not a commercial transaction, as it merely outlined the process for the disbursement of insurance proceeds.

The District Court thus granted judgment in favor of Wells Fargo, and Branche timely appealed. Wells Fargo has now filed a motion which we have construed as seeking summary action. Branche opposes the motion.[2]

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of summary judgment and apply the same standard as does the district court. McGreevy v. Stroup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Haybarger v. Lawrence Cnty. Adult Prob. & Parole, 667 F.3d 408, 412 (3d Cir. 2012).

After careful review of the record, we conclude that the District Court correctly granted Wells Fargo's motion for summary judgment and denied Branche's cross-motion for the reasons provided in its November 6, 2013 memorandum.

Only the question of Branche's standing under the UTPCPL requires brief discussion.[3] As the District Court explained, the UTPCPL prohibits "unfair or deceptive

---

[2] Although Branche has appealed pro se, we note that she was represented by multiple counsel at various stages in the District Court, including when she filed her Second Amended Complaint and at the summary judgment stage.

acts or practices," and protects a person who "purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property. . . as a result of the use . . . of a method, act or practice declared unlawful" by the Act. 73 Pa. Cons. Stat. Ann. § 201-9.2(a). For a private person to have standing, he or she must be a "purchaser" of the good or services, and must prove justifiable reliance. Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221, 224 (3d Cir. 2008).

Here, the District Court correctly stated that "only those who purchase goods or services, not those who may receive a benefit from the purchase," satisfy the requirement that one be a "purchaser." Gemini Phys. Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 65 (3d Cir. 1994). Although direct privity is not required, the statute "unambiguously permits only persons who have purchased or leased goods or services to sue. . . . Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992).

Although Branche has had many dealings with Wells Fargo concerning the repairs to the house and payment of contractors, the District Court correctly determined that she was not a purchaser of Wells Fargo's services, as it was Branche's common law husband who obtained the mortgage. After Mr. White's death, his estate was listed on the

---

[3] Although some of our previous decisions have framed this issue in terms of statutory "standing" under the UTPCPL, the Supreme Court recently clarified that the concept of statutory standing is "misleading" because the question is not one of subject matter jurisdiction but simply whether the plaintiff has stated a cause of action under the statute. Lexmark Int'l, Inc v. Static Control Components, Inc., 134 S. Ct. 1377, 1387 n.4 (2014). We are satisfied that Branche had Article III standing to assert her claims.

mortgage, and while the estate may have had a claim under the UTPCPL, we need not and do not decide that issue because Branche, who brought the claim in her individual capacity, does not. Accordingly, the District Court properly dismissed this claim.

For the foregoing reasons, we grant Wells Fargo's motion and will summarily affirm the District Court's judgment.