**Richard A. BALDERSTON, M.D.**

v.

**MEDTRONIC SOFAMOR DANEK, INC., and Acromed Corporation**

**No. CIV. A. 00–CV–1760.**

United States District Court, E.D. Pennsylvania.

June 11, 2001.

---

Paul R. Rosen, Michael C. Wagner, Nancy Abrams, Spector, Gadon and Rosen, P.C., Philadelphia, PA, for plaintiff.

Philip H. Lebowitz, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Medtronic Sofamor Danek, Inc., defendant.

Mark Herrmann, Jones, Day, Reavis And Pogue, Cleveland, OH, Louis A. Bove, Bodell, Bove, Grace & Van Horn, P.C., Philadelphia, PA, for Acromed Corp., defendant.

## MEMORANDUM AND ORDER

SURRICK, District Judge.

Plaintiff Richard A. Balderston, M.D., commenced this action by writ of summons in November 1999 in the Philadelphia Court of Common Pleas against Defendants Medtronic Sofamor Danek, Inc. ("Medtronic") and Acromed Corp. ("Acromed").[1] On February 28, 2000, Plaintiff filed a one-count Complaint in state court asserting a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 72 P.S. § 201–1, *et seq.* On April 4, 2000, Acromed removed the action to this Court on the basis of diversity of citizenship. Medtronic consented to the removal. (Doc. No. 1, Notice of Removal, Exhibit "B").

Presently before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Fed.R.Civ.P. 12(b)(6) and supporting Memorandum (Doc. No. 2), Defendants' Reply (Doc. No. 9),[2] and Plaintiff's Response (Doc. No. 8) and Sur-Reply (Doc. No. 10) in opposition to Defendants' Motion. For the reasons that follow, the Court will grant Defendants' Motion and dismiss Plaintiff's Complaint.

## I. BACKGROUND

Plaintiff is an orthopedic surgeon whose primary practice is in the field of spinal surgery. Medtronic and Acromed are manufacturers of a device commonly known as a "bone screw" or "pedicle screw." Plaintiff contends that Defendants violated the UTPCPL when they deceptively marketed the pedicle screws for use in spinal fusion surgery.

Plaintiff's Complaint alleges that in or about 1985, Plaintiff and other orthopedic surgeons began to study the use of pedicle screws in spinal fusion surgery, and ultimately determined that the future use of pedicle screws in such procedures would be safe and effective. Plaintiff alleges that Defendants knew of this determination and knew that Plaintiff and other orthopedic surgeons would convince the federal Food and Drug Administration ("FDA") to eventually approve the use of pedicle screws in spinal fusion surgery. Plaintiff asserts that in or about 1986 or 1987, knowing that the FDA had not approved pedicle screws for use in spinal fusion surgery, Defendants "began to market their pedicle screws to plaintiff for use by plaintiff on behalf of his patients for their personal use, and to other physicians for use in spinal fusion surgeries." Defendants marketed the pedicle screws knowing that Plaintiff and other doctors to whom they marketed would rely on Defendants to obtain FDA approval and would assume that the screws had been approved by the FDA for use in spinal fusion surgery. According to Plaintiff, Defendants adopted and

---

**1.** Acromed's Notice of Removal states that its correct name is DePuy AcroMed, Inc.

**2.** Medtronic joined in Acromed's Motion to Dismiss. (Doc. No. 3).

carried out a scheme to deceptively market the pedicle screws to Plaintiff for the personal use of his patients and misrepresented the approval status of the screws "by concealing the material information regarding the FDA status of their pedicle screws from plaintiff and his patients until [Defendants] could obtain FDA approval."

Plaintiff contends that Defendants' practices were unfair or deceptive under sections 202–2(4)(ii) and (v) of the UTPCPL because they caused "a likelihood of confusion or of misunderstanding as to the ... approval or certification of goods or services" and represented that "goods or services have sponsorship, approval ... that they do not have."

Plaintiff also asserts that Defendants marketed the pedicle screws knowing that "if plaintiff knew that the FDA approval had not been obtained, the plaintiff would have a duty to disclose that information to his patients and that the plaintiff, as well as other surgeons, would delay the designation and purchase of the product for their patients." The Complaint specifically alleges that:

> Based on the efforts and misrepresentations of the Acromed and [Medtronic] sales representatives, and as a result of the defendants' deceptive practices to promote the sale of the pedicle screw through plaintiff and other physicians, plaintiff, acting as an agent for his individual patients, was induced to and began to purchase for and use in surgeries for his practice pedicle screws from Acromed in 1986 or 1987 and from [Medtronic] in 1987 or 1988, which screws were designated for personal use by and inserted in plaintiff's patients in

the spine fusion surgery he performed on those patients. (Complaint, ¶ 35).

Plaintiff avers that as a result of Defendants' deception, he was exposed to numerous lawsuits by patients claiming that they did not give informed consent for his use of the pedicle screws in their surgeries.[3] As a defendant in these lawsuits, he was required to provide uncompensated deposition testimony and to attend court proceedings, during which time he was unable to see patients or perform surgery. In addition, he was required to provide deposition and trial testimony in other cases in which he was not a defendant, but was the physician who performed the surgery at issue. Plaintiff alleges that as a result of Defendants' deceptive acts, he suffered an ascertainable loss of money and property including lost income, a decrease in his patient base, and damage to his professional reputation. Plaintiff's Complaint seeks actual and treble damages pursuant to 72 P.S. § 201–9.2, along with costs, attorneys' fees and prejudgment interest.

## II. *LEGAL STANDARD*

When considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665 (3d Cir.1988), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989). The court may use Plaintiff's memoranda opposing dismissal "to clarify allegations in the complaint whose meaning is unclear." *Maio v. Aet-*

---

**3.** Nationwide, thousands of lawsuits have been filed by patients claiming to have suffered injuries resulting from the use of bone screws in their spinal fusion surgeries. The

federal cases were consolidated in this district. *See In re Orthopedic Bone Screw Products Liability Litigation,* 193 F.3d 781, 784 (3d Cir.1999).

*na, Inc.,* 221 F.3d 472, 485 n. 12 (3d Cir. 2000), *citing, Pegram v. Herdrich,* 530 U.S. 211, 230 n. 10, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). A motion to dismiss may be granted only if the court finds that Plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

## III. DISCUSSION

### A. Pennsylvania's Unfair Trade Practices and Consumer Protection Law

The UTPCPL defines and declares unlawful certain "unfair methods of competition" and "unfair or deceptive acts or practices." 73 P.S. §§ 201–2 and 201–3. Section 201–9.2(a) of the UTPCPL provides a private right of action and the potential recovery of treble damages as follows:

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees. 73 P.S. § 201–9.2(a).

Although the UTPCPL is a remedial statute intended to protect consumers from unfair or deceptive practices or acts, *Commonwealth by Creamer v. Monumental Properties, Inc.,* 459 Pa. 450, 329 A.2d 812, 816 (1974), its provisions clearly limit the class of plaintiffs who may pursue private actions. *See, e.g., Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d 63, 65 (3d Cir.1994); *Katz v. Aetna Cas. & Sur. Co.,* 972 F.2d 53, 55 (3d Cir.1992). A plaintiff seeking to recover under section 201–9.2 "must not only have suffered an ascertainable loss as the result of an 'unfair or deceptive act,' but also must be a 'person,' *who made a 'purchase,' 'primarily for personal, family, or household purposes.'*" *Valley Forge Towers South Condominium v. Ron–Ike Foam Insulators, Inc.,* 393 Pa.Super. 339, 574 A.2d 641, 645 (1990) (emphasis added).

### B. Motion to Dismiss

Defendants argue that Plaintiff cannot state a claim under the UTPCPL because the Complaint alleges that Plaintiff bought Defendants' pedicle screws for use in his business and not for personal, household or family use, and because pedicle screws are prescription medical devices which cannot be purchased by a consumer for personal, family or household use. (Def.Memorandum, p. 4, 7). Defendants further contend that an additional threshold basis to dismiss the Complaint exists because Plaintiff admitted in his Response that he did not purchase the pedicle screws used in his patients' surgeries.[4]

---

4. In his Response, Plaintiff contends that Defendants have erroneously characterized the facts pled in the Complaint as alleging that Plaintiff purchased the pedicle screws for use in his medical practice. According to Plaintiff, the Complaint alleges that he acted as his patients' agent and designated the pedicle screws for their purchase and personal use. (Pl.Response, p. 3). We would note that Defendants' interpretation of the facts is not

(Def.Reply, p. 1–2).

In his Response, Plaintiff acknowledges that he did not purchase the pedicle screws, and he disputes Defendants' contention that the pedicle screws were purchased primarily for business use in his surgical practice. According to Plaintiff, he acted as a "purchasing agent" on behalf of his patients, who purchased the pedicle screws for their personal use. The Response states:

> The facts are that after obtaining the informed consent of the consumer patient to purchase and insert the pedicle screw as part of their surgery, plaintiff then designated the pedicle screw for *the patients' purchase and use.* The hospital bills the patient (or the patient's medical insurer on behalf of the patient) for the device after it is inserted as part of the surgical procedure. *The purchase is by the consumer, the patient. Plaintiff merely designates that screw for use by the consumer after obtaining informed consent prior to the surgery. Neither plaintiff nor his practice are ever billed for the screw and do not pay for it.* Nor does the hospital purchase the screw for its use, but only as a prosthetic device for patients who order it to be used in their surgery.

(Response, p. 3 n. 1, *citing* Complaint, ¶¶ 24–26) (emphasis added). Plaintiff argues that he has standing under the UTPCPL to recover the damages which he suffered because he was the "intended victim" of Defendants' deceptive marketing practices and the intermediary through whom his patients purchased the pedicle screws for their personal use. (Pl.Response, p. 7–8). In support of this argument, Plaintiff relies on the cases of *Valley Forge*, 393 Pa.Super. 339, 574 A.2d 641,

and *S. Kane & Son Profit Sharing Trust v. Marine Midland Bank*, No. 95–CV–7058, 1996 WL 200603, 1996 U.S. Dist. LEXIS 3101 (E.D.Pa. March 8, 1996) (Newcomer, J.). Both of these cases permitted claims under the UTPCPL by plaintiffs acting in a representative capacity. However, both have no application to the instant facts.

In *Valley Forge*, a residential condominium association entered into an agreement with a contractor to re-roof the association building. The agreement specified that the contractor would install the roofing membrane of a particular manufacturer. *Valley Forge*, 574 A.2d at 642–3. Although the contractor directly purchased the roofing membrane, the defendant manufacturer issued its warranty to the association. *Id.* at 646. When the roof began to leak, the association brought a UTPCPL claim against the contractor and the manufacturer. *Id.* The trial court granted the manufacturer's demurrer, finding that the association was not in privity with the manufacturer and, therefore, was not a purchaser within the meaning of the UTPCPL. *Id.* Alternatively, the trial court concluded that the roof was purchased for the business purpose of managing the condominiums and not for a personal, family or household purpose. *Id.*

The Superior Court reversed, holding that when the association bought the roof through the contractor, and received a warranty directly from the manufacturer, it was a "purchase" giving rise to its claim against the manufacturer under the UTPCPL. *Id.* at 647. The court reasoned that to require strict privity between the association and the manufacturer would allow manufacturers "to successfully evade

---

unreasonable. Several paragraphs of the Complaint could be construed as alleging that Plaintiff purchased the pedicle screws for use in his surgical practice. (*See* Complaint, ¶¶ 24, 25, 35, 39, 57).

liability for alleged failures to honor their long-term warranties based upon the simple expedient of supplying their product and their warranties to intended ultimate purchasers, through a general contractor." *Id.* at 646–7. The court further held that the association's purchase was for personal, family or household purposes. The court noted that because the association was authorized by statute to contract and pursue litigation in a representative capacity on behalf of condominium unit owners, it was the unit owners' residential use of the roof that controlled. *Id.* at 648, *citing,* 68 Pa.C.S.A. § 3302.

Similarly, *S. Kane* involved a suit by an employee benefit plan trust against a bank allegedly involved in defrauding the trust out of $125,000 it had invested in another company's private placement securities. *S. Kane,* 1996 WL 200603 *1, 1996 U.S. LEXIS at *1. The bank moved to dismiss the UTPCPL claim on the ground that the trust's purchase of the securities was not for personal, family or household purposes. *Id.* at **2–3, 1996 U.S. LEXIS at **8–9. In denying the motion, the court held that the UTPCPL expressly includes trusts among the "persons" with standing to sue under the § 201–9.2 *Id.* Further, because the trust was formed to act on behalf of individual employee members of the benefit plan, the trust's purchase of securities was primarily for the personal purposes of those beneficiaries. *Id.* at **3–4, 1996 U.S. LEXIS at **9–11.

In both *Valley Forge* and *S. Kane,* the court concluded that the plaintiffs had standing under the UTPCPL because they purchased the goods and services at issue primarily for the personal, family or household purposes of the consumers for whom they were the legal representatives. In the instant case, Plaintiff obviously is not bringing this action in a representative capacity on behalf of his patients. Moreover, Plaintiff concedes that he was neither the purchaser nor the consumer of the pedicle screws. Although Plaintiff's Complaint is somewhat ambiguous on this point, *see* note 4, *supra,* his Response to the Motion to Dismiss unequivocally states that "[t]he purchase is by the consumer, the patient.... Plaintiff merely designates that screw for use by the consumer after obtaining informed consent prior to the surgery. Neither plaintiff nor his practice are ever billed for the screw and do not pay for it."[5] (Pl. Response, p. 3 n. 1). Courts have consistently held that the UTPCPL's private right of action is expressly limited to persons who purchase or lease goods or services. *See, e.g., Katz,* 972 F.2d at 55 (UTPCPL "unambiguously permits only persons who have purchased or leased goods or services to sue"); *Gemini Physical Therapy & Rehab., Inc. v. State Farm Mut. Auto. Ins. Co.,* 40 F.3d at 65 (UTPCPL protects only purchasers of goods or services, not those who may receive a benefit from, or be indirectly injured by, the purchase); *Gottlieb v. Tropicana Hotel and Casino,* 109 F.Supp.2d

---

**5.** Even if we were to assume that Plaintiff purchased the pedicle screws, we would conclude that he did so primarily for business purposes as part of his surgical practice. To be actionable under the UTPCPL, a purchase must be primarily for personal, family or household purposes. *See e.g., Trackers Raceway, Inc. v. Comstock Agency, Inc.,* 400 Pa.Super. 432, 583 A.2d 1193, 1197 (1990) (insurance purchased for business purposes not covered by UTPCPL); *Mantakounis v. Aetna Cas. & Sur. Co.,* Civ. A. No. 98–4392, 1999 WL 600535 (E.D.Pa. August 10, 1999), *aff'd,* 254 F.3d 1078 (3d Cir.2000) (same); *Waldo v. North American Van Lines,* 669 F.Supp. 722, 725–6 (W.D.Pa.1987) ("UTPCPL protection limited to purchases for personal, family or household purposes"). Accordingly, even if he were purchaser, Plaintiff would not have standing under the UTPCPL.

324, 331 (E.D.Pa.2000) (defining "purchaser" as one who obtains goods or services in exchange for money or its equivalent); *Lauer v. McKean Corp.,* 2 Pa. D. & C. 4th 394, ·395–7 (P.Com.Pl.1989) (UTPCPL "permits a private action . . . only by a person who 'purchases' goods").

We are not persuaded by Plaintiff's contention that he should be permitted to bring this claim as a "purchasing agent" for his patients. While our research has revealed no case squarely on point, other courts have rejected UTPCPL claims premised on agency theories similar to Plaintiff's. In *DiLucido v. Terminix Int'l,* 450 Pa.Super. 393, 676 A.2d 1237, 1242 (1996), the court held that a landlord did not have standing to bring a claim under the UTPCPL. In response to plaintiff's argument that her situation was analogous to *Valley Forge,* the court explained that, "[plaintiff] is not attempting to bring this action as a representative of her tenants; rather, she seeks to recover as the owner of rental income property." *Id.* Similarly, in *Cumberland Valley School Dist. v. Hall–Kimbrell Environmental Services, Inc.,* 433 Pa.Super. 38, 639 A.2d 1199, 1201 (1994), the court distinguished *Valley Forge* and rejected the plaintiff school district's claim that it acted as the legal representative of taxpayers and students by purchasing asbestos removal services for the public's personal purpose of having adequate educational services.

■ Plaintiff in the instant case did not act as the legal representative of his patients and is not pursuing this litigation on his patients' behalf.[6] Plaintiff instituted this lawsuit for himself, seeking money damages for losses that he personally sustained as a result of Defendants' conduct. His patients have no interest in this litigation whatsoever.

Finally, Plaintiff's appeal to public policy cannot save his Complaint. According to Plaintiff, many products are marketed to professional intermediaries, such as physicians, contractors, real estate agents, etc., who act as "purchasing agents" in recommending products to the ultimate consumer. As a "purchasing agent," Plaintiff claims that he was the "intended target and victim of [Defendants'] deceptive marketing practices" and an "integral part of the transaction" resulting in his patients' purchase of the pedicle screws. (Pl.Sur–Reply, p. 3). Plaintiff argues that precluding claims such as his would permit those who market their products to such intermediaries to escape "any type of exposure or liability to the 'intended victim' of the misrepresentations under a statute which is intended to protect against and deter the very type of deceptive marketing practice utilized by defendants and specifically prohibited by [the UTPCPL]." (Response, p. 12).

■ We decline Plaintiff's invitation to disregard the express terms of the UTPCPL and recognize a new class of "purchasing agent" plaintiffs. If Plaintiff wishes to expand the reach of the UTPCPL, he must address his appeal to the legislature, not the Court. The fact that Plaintiff, as part of his surgical practice, played a role in his patients' purchase

---

**6.** Plaintiff suggests that his claim is supported by Pennsylvania's Controlled Substance, Drug, Device and Cosmetic Act, 35 P.S. § 780–101, *et seq.,* which according to Plaintiff, gives him "statutory authority to designate medical devices for his patients' personal use . . . identical to that of the condominium association in *Valley Forge* and the trust in *S.*

*Kane & Son."* (Pl.Response, p. 10–11, n. 4). We disagree. The Controlled Substance Act regulates, *inter alia,* the provision of controlled substances and medical devices; it does not authorize Plaintiff to pursue litigation as the legal representative of his patients. 35 P.S. § 780–101, *et seq.*

of pedicle screws simply does not satisfy the unambiguous standing requirements of the UTPCPL. Plaintiff is not the legal representative of his patients and he did not purchase Defendants' pedicle screws primarily for personal, family or household purposes. Accordingly, he has no private right of action under the UTPCPL.[7] *See Gemini,* 40 F.3d at 65 (health care provider, who was assignee of insured's right to payment under insurance policy, was not purchaser or consumer under UTPCPL and, therefore, lacked standing to bring claim against insurer); *Katz,* 972 F.2d at 57 (passenger injured in car accident lacked standing to bring UTPCPL claim against insurer as intended beneficiary of driver's insurance policy); *Lauer,* 1989 WL 206448 at \*2 ("section 201–9.2 [of UTPCPL] was drafted for the purpose of excluding certain classes of consumers who were subjected to fraudulent or deceptive trade practices from bringing a private action").

## IV. CONCLUSION

For the foregoing reasons, we find that Plaintiff's Complaint fails to state a claim upon which relief can be granted. An appropriate order follows.

---

7. Because we have concluded that Plaintiff lacks standing, we need not address Defendants' argument that the UTPCPL does not apply to the purchase of medical devices.