**Richard A. BALDERSTON, M.D., Appellant,**

v.

**MEDTRONIC SOFAMOR DANEK, INC.; Acromed Corporation.**

No. 01–2589.

United States Court of Appeals, Third Circuit.

Argued Jan. 16, 2002.

Filed: April 3, 2002.

Paul R. Rosen, (Argued), David B. Picker, Nancy Abrams, Michael C. Wagner,

Spector Gadon & Rosen, Philadelphia, PA, Attorneys for Appellant.

Philip H. Lebowitz, Pepper Hamilton, Philadelphia, PA, Attorney for Appellee, Medtronic Sofamor Danek, Inc.

Mark Herrmann, (Argued), John Q. Lewis, Jones Day Reavis & Pogue, Cleveland, OH, Luis A. Bove, Bodell Bove Grace & Van Horn, Philadelphia, PA, Attorneys for Appellee, Acromed Corporation.

Before: SCIRICA, GREENBERG and BRIGHT *, Circuit Judges.

## OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is an appeal in a diversity case from an order dismissing a physician's deceptive marketing claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL) for lack of standing. We will affirm.

## I.

Richard Balderston is a Philadelphia orthopedic surgeon who specializes in spinal surgery. Medtronic Sofamor Danek, Inc. and Acromed Corp. manufacture a device commonly known as a "bone screw" or "pedicle screw."[1] From 1985, Dr. Balderston began employing these screws in spinal fusion surgeries, believing that pedicle screws were safe and appropriate for this use.

Dr. Balderston brought suit under the CPL in the Pennsylvania Court of Common Pleas, claiming Medtronic and Acromed intentionally concealed and misrepresented the Food and Drug Administration approval status of their pedicle screws. As evidence of wrongdoing, Dr. Balderston alleged defendants promoted their screws through teaching seminars and literature, leading him and other orthopedic surgeons to believe they were FDA approved. Because the screws were not FDA approved for spinal fusion surgeries, Dr. Balderston alleged he was exposed to lawsuits by patients claiming they did not give informed consent.[2]

Dr. Balderston contends these lawsuits forced him to provide uncompensated deposition and trial testimony, both as a defendant and an expert witness on Medtronic's or Acromed's behalf. He seeks damages in excess of $50,000, trebled under the CPL, with attorneys' fees and prejudgment interest.

Dr. Balderston's complaint solely alleges a violation of the CPL, which has a six-year statute of limitations. *Cf. Gabriel v. O'Hara*, 368 Pa.Super. 383, 534 A.2d 488 (1987). Although Dr. Balderston might have asserted claims against defendants for common law fraud, he declined to file suit until February 28, 2000, several years beyond the two-year statute of limitations. His complaint asserts he learned the screws were not FDA approved for spinal surgeries in November 1993.[3]

---

\* The Honorable Myron H. Bright, United States Circuit Judge for the Eighth Judicial Circuit, sitting by designation.

1. The products are officially labeled as "bone screws." Because they are inserted into spinal bones called "pedicles," they are sometimes, as in the complaint, called "pedicle screws."

2. Dr. Balderston's complaint alleged his unwitting failure to inform patients of the FDA status for pedicle screws exposed him to po-

tential liability. Recently, in *Southard v. Temple University Hospital*, 566 Pa. 335, 781 A.2d 101 (2001), the Pennsylvania Supreme Court held a physician has no legal duty to inform patients of the FDA classification of medical devices used in surgeries. *Id.* at 108–09.

3. Several of his patients claiming injuries from their surgeries involving pedicle screws allegedly sued defendants directly.

After removal to the Eastern District of Pennsylvania on the basis of diversity,[4] the District Court granted defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Balderston v. Medtronic Sofamor Danek, Inc.*, 152 F.Supp.2d 772, 776–80 (E.D.Pa. 2001). Because Dr. Balderston's patients, not Dr. Balderston, "purchased" the screws, the Court found Dr. Balderston lacked standing under the CPL. Alternatively, the Court held Dr. Balderston could not qualify as a "purchaser" under the statute, because any "purchase" was for business, not "personal, family or household" use. *Id.* This appeal followed.

## II.

The District Court had diversity jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291.

## III.

The initial question is who "purchased" the pedicle screws.[5] Section 201–9.2(a) of the CPL provides a private right of action and the potential recovery of treble damages:

Any person who *purchases* or leases goods or services primarily for *personal, family or household purposes* and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court

may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Cons.Stat. Ann. § 201–9.2 (West 1993) (emphasis added). The statute does not define "purchaser." Pennsylvania courts have declared the CPL is remedial, protecting consumers from deceptive practices or acts. *Commonwealth, by Creamer v. Monumental Props., Inc.*, 459 Pa. 450, 329 A.2d 812, 816 (1974). To recover, a plaintiff must suffer an ascertainable loss resulting from an "unfair or deceptive act" and have made a "purchase ... primarily for personal, family or household purposes." *Valley Forge Towers S. Condo. Ass'n v. Ron–Ike Foam Insulators, Inc.*, 393 Pa.Super. 339, 574 A.2d 641, 645 (1990).

■ Acknowledging he did not purchase the pedicle screws himself, Dr. Balderston contends he acted as his patients' "purchasing agent." But the District Court held Dr. Balderston brought suit not as the "legal representative" of his patients, but on his own behalf for personal losses. *Balderston*, 152 F.Supp.2d at 778. Because his patients had "no interest in this litigation whatsoever," the District Court found Dr. Balderston had no private right of action. *Id.* at 779. Therefore, he had no standing under the CPL. Id.

Dr. Balderston contends the District Court applied an "unduly tight, artificial

**4.** Dr. Balderston is a citizen of Pennsylvania; Medtronic is an Indiana corporation with principal offices in Tennessee; Acromed is an Ohio corporation with principal offices in Massachusetts.

**5.** We exercise plenary review over the District Court's dismissal under Fed.R.Civ.P. 12(b)(6).

*Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir.2001). We accept Dr. Balderston's pleaded allegations as true and draw all reasonable inferences in his favor. *Colburn v. Upper Darby Township*, 838 F.2d 663, 665 (3d Cir.1988).

and narrow" construction of the statutory term "purchase," urging that it covers persons who are "necessarily and intimately involved" in purchasing transactions. Because the screws could be obtained only by prescription, Dr. Balderston maintains he was the "decisionmaker" in the "purchase transactions," effectively making him a "purchaser." Yet Dr. Balderston does not deny that his patients purchased the screws.[6]

As noted, the CPL does not define "purchaser." But as we have observed:

> [T]he statute unambiguously permits only persons who have purchased or leased goods or services to sue. The private cause of action is also limited to unfair or deceptive methods, acts, or practices in the conduct of any "trade or commerce".... Had the Pennsylvania legislature wanted to create a cause of action for those not involved in a sale or lease, it would have done so. The Pennsylvania Supreme Court has never addressed the issue before us. Its only reported decision on the CPL supports the conclusion that a private plaintiff must at least have purchased or leased goods or services.

*Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir.1992) (citations omitted).[7] The District Court here relied on *Katz*. Dr. Balderston contends *Katz* is cabined to plaintiffs who lack commercial dealings with defendants and are not targeted by defendants' marketing plans. But we believe *Katz* supports the District Court's conclusion. The plaintiffs in *Katz* claimed

to be "intended beneficiaries" of the purchased insurance, a closer relationship than Dr. Balderston's alleged relationship to the patients' purchases of the defendants' screws.

The District Court also relied on *Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mutual Auto. Insurance Co.*, 40 F.3d 63 (3d Cir.1994). In *Gemini*, a physical therapist sued his patients' insurer for failing to pay his bills. We found the therapist had no standing under the CPL:

> The CPL contemplates as the protected class only those who purchase goods or services, not those who may receive a benefit from the purchase. Although Gemini may have been indirectly injured, it is not a purchaser or consumer of goods or services under the CPL and therefore has no private right of action under the statute.... Because the CPL focuses narrowly on the protection of consumers in the purchase of goods or services, we predict that the Pennsylvania Supreme Court would not infer an assignment of claims under the CPL.

*Id.* at 65–66 (citations omitted). We see no principled distinction here.

Dr. Balderston relies on two cases allowing plaintiffs acting in representative capacities to pursue claims under the CPL. In *Valley Forge Towers*, the court held a condominium corporation, acting in a representative capacity, could sue for damages under the CPL. 574 A.2d at 642–43. And in *Kane & Son Profit Sharing Trust*

---

**6.** Dr. Balderston's Opening Brief stated, "Defendants mischaracterize the facts of plaintiff's complaint by claiming plaintiff purchased the pedicle screw as part of his medical practice.... The purchase is by the consumer, the patient. Plaintiff merely designates that screw for use by the consumer after obtaining informed consent prior to surgery. Neither plaintiff nor his practice are ever billed for the screw and do not pay for it."

**7.** In *Katz*, plaintiffs injured in an automobile accident sued the other driver's insurer, alleging a misrepresentation of coverage precipitated an inopportune settlement. We found the plaintiffs, who had not purchased the policies at issue, had no standing. *Id.*

*v. Marine Midland Bank,* 1996 WL 325894 (E.D.Pa. June 13, 1996), the court declared a trust a "purchaser" under the CPL because it acted for members of an employee benefit plan. *Id.* at *8–11.

But the District Court rejected a comparison to *Valley Forge* or *Kane*:

> In both [cases] the court concluded that the plaintiffs had standing under the [CPL] because they purchased the goods and services at issue primarily for the personal, family or household purposes of the consumers for whom they were the legal representatives. In the instant case, [Dr. Balderston] obviously is not bringing this action in a representative capacity on behalf of his patients. Moreover, [Dr. Balderston] concedes that he was neither the purchaser nor the consumer of the pedicle screws. ... While our research has revealed no case squarely on point, other courts have rejected [CPL] claims premised on agency theories similar to [Dr. Balderston's].... [Dr. Balderston] did not act as the legal representative of his patients and is not pursuing this litigation on his patients' behalf.

*Balderston,* 152 F.Supp.2d at 778–79. We agree. The District Court also cited *DiLucido v. Terminix International, Inc.,* 450 Pa.Super. 393, 676 A.2d 1237 (1996), where the court rejected a landlord's attempt to recover under the CPL for damages caused to her tenants. *Id.* at 1242. Like the plaintiff in *DiLucido,* Dr. Balderston seeks recovery under the statute only for his own business losses.

No Pennsylvania authority supports Dr. Balderston's analysis. We are satisfied that Dr. Balderston's claims are not cognizable under the CPL.[8] Nor does Pennsylvania public policy mandate coverage. *Balderston,* 152 F.Supp.2d at 779–80. Dr.

Balderston is not a "purchaser" under the CPL. Therefore, he has no standing to sue.

## IV.

 As an alternative ground for dismissal, the District court found any "purchase" by Dr. Balderston was "primarily for business purposes as part of his surgical practice," not for "personal, family or household use," as required for the CPL. *Id.* at 778 n. 5 (citing 73 Pa. Cons.Stat. Ann. § 201–9.2 (West 1993)). We review this conclusion of law de novo.

The District Court's analysis on this point was offered only in a footnote. *Id.* Although lacking elaboration, we agree with its conclusion. In construing claims under the CPL, Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for "personal, family or household use." *E.g., Weinberg v. Sun Co.,* 565 Pa. 612, 777 A.2d 442, 446 (2001); *Trackers Raceway, Inc. v. Comstock Agency, Inc.,* 400 Pa.Super. 432, 583 A.2d 1193, 1197 (1990). Dr. Balderston suggests his purchase qualifies, because he "purchased" the screws for his patients' "personal use." But we have uncovered no Pennsylvania decision finding actionable a non-representative plaintiff's claim based on others' "personal uses." Dr. Balderston employed the screws only in his medical practice. His alleged losses were not "personal," but affected only his medical practice. Therefore, he lacks standing under the CPL.

## V.

For the foregoing reasons we will affirm the judgment of the District Court.

---

**8.** *Accord Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 378 (3d Cir.1990) (federal courts with diversity jurisdiction must follow existing state law).