

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-3-2002

# Balderston v. Medtronic Sofamor

Precedential or Non-Precedential:

Docket No. 01-2589

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Balderston v. Medtronic Sofamor" (2002). *2002 Decisions.* Paper 241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed April 3, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-2589

RICHARD A. BALDERSTON, M.D.,
        Appellant

v.

MEDTRONIC SOFAMOR DANEK, INC.;
ACROMED CORPORATION

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 00-cv-01760
(Honorable R. Barclay Surrick)

Argued January 16, 2002

Before: SCIRICA, GREENBERG and BRIGHT*,
Circuit Judges

(Filed: April 3, 2002)

_____

*The Honorable Myron H. Bright, United States Circuit Judge for the
        Eighth Judicial Circuit, sitting by designation.


        PAUL R. ROSEN, ESQUIRE
          (ARGUED)
        DAVID B. PICKER, ESQUIRE
        NANCY ABRAMS, ESQUIRE
        MICHAEL C. WAGNER, ESQUIRE
        Spector Gadon & Rosen
        Seven Penn Center, 7th Floor
        1635 Market Street
        Philadelphia, Pennsylvania 19103

         Attorneys for Appellant

        PHILIP H. LEBOWITZ, ESQUIRE
        Pepper Hamilton
        3000 Two Logan Square
        18th and Arch Streets
        Philadelphia, Pennsylvania 19103

         Attorney for Appellee,
        Medtronic Sofamor Danek, Inc.

        MARK HERRMANN, ESQUIRE
          (ARGUED)
        JOHN Q. LEWIS, ESQUIRE
        Jones Day Reavis & Pogue

North Point
901 Lakeside Avenue
Cleveland, Ohio 44114

LOUIS A. BOVE, ESQUIRE
Bodell Bove Grace & Van Horn
One Penn Square West, 6th Floor
30 South 15th Street
Philadelphia, Pennsylvania 19102

   Attorneys for Appellee,
Acromed Corporation

OPINION OF THE COURT

SCIRICA, Circuit Judge.

This is an appeal in a diversity case from an order dismissing a physician's deceptive marketing claim under

the Pennsylvania Unfair Trade Practices and Consumer Protection Law (CPL) for lack of standing. We will affirm.

I.

Richard Balderston is a Philadelphia orthopedic surgeon who specializes in spinal surgery. Medtronic Sofamor Danek, Inc. and Acromed Corp. manufacture a device commonly known as a "bone screw" or "pedicle screw."[1] From 1985, Dr. Balderston began employing these screws in spinal fusion surgeries, believing that pedicle screws were safe and appropriate for this use.

Dr. Balderston brought suit under the CPL in the Pennsylvania Court of Common Pleas, claiming Medtronic and Acromed intentionally concealed and misrepresented the Food and Drug Administration approval status of their pedicle screws. As evidence of wrongdoing, Dr. Balderston alleged defendants promoted their screws through teaching seminars and literature, leading him and other orthopedic surgeons to believe they were FDA approved. Because the screws were not FDA approved for spinal fusion surgeries, Dr. Balderston alleged he was exposed to lawsuits by patients claiming they did not give informed consent.[2]

Dr. Balderston contends these lawsuits forced him to provide uncompensated deposition and trial testimony, both as a defendant and an expert witness on Medtronic's or Acromed's behalf. He seeks damages in excess of $50,000, trebled under the CPL, with attorneys' fees and prejudgment interest.

Dr. Balderston's complaint solely alleges a violation of the CPL, which has a six-year statute of limitations. Cf. Gabriel

_____

1. The products are officially labeled as "bone screws." Because they are

inserted into spinal bones called "pedicles," they are sometimes, as in the complaint, called "pedicle screws."

2. Dr. Balderston's complaint alleged his unwitting failure to inform patients of the FDA status for pedicle screws exposed him to potential liability. Recently, in Southard v. Temple University Hospital, 781 A.2d 101 (Pa. 2001), the Pennsylvania Supreme Court held a physician has no legal duty to inform patients of the FDA classification of medical devices used in surgeries. Id. at 108-09.

v. O'Hara, 534 A.2d 488 (Pa. Super. Ct. 1987). Although Dr. Balderston might have asserted claims against defendants for common law fraud, he declined to file suit until February 28, 2000, several years beyond the two-year statute of limitations. His complaint asserts he learned the screws were not FDA approved for spinal surgeries in November 1993.3

After removal to the Eastern District of Pennsylvania on the basis of diversity,4 the District Court granted defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Balderston v. Medtronic Sofamor Danek, Inc., 152 F. Supp. 2d 772, 776-80 (E.D. Pa. 2001). Because Dr. Balderston's patients, not Dr. Balderston, "purchased" the screws, the Court found Dr. Balderston lacked standing under the CPL. Alternatively, the Court held Dr. Balderston could not qualify as a "purchaser" under the statute, because any "purchase" was for business, not"personal, family or household" use. Id. This appeal followed.

II.

The District Court had diversity jurisdiction under 28 U.S.C. S 1332(a). We have jurisdiction under 28 U.S.C. S 1291.

III.

The initial question is who "purchased" the pedicle screws.5 Section 201-9.2(a) of the CPL provides a private right of action and the potential recovery of treble damages:

---

3. Several of his patients claiming injuries from their surgeries involving pedicle screws allegedly sued defendants directly.

4. Dr. Balderston is a citizen of Pennsylvania; Medtronic is an Indiana corporation with principal offices in Tennessee; Acromed is an Ohio corporation with principal offices in Massachusetts.

5. We exercise plenary review over the District Court's dismissal under Fed. R. Civ. P. 12(b)(6). Brown v. Philip Morris, Inc., 250 F.3d 789, 796 (3d Cir. 2001). We accept Dr. Balderston's pleaded allegations as true and draw all reasonable inferences in his favor. Colburn v. Upper Darby Township, 838 F.2d 663, 665 (3d Cir. 1988).

> Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. The court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper. The court may award to the plaintiff, in addition to other relief provided in this section, costs and reasonable attorney fees.

73 Pa. Cons. Stat. Ann. S 201-9.2 (West 1993) (emphasis added). The statute does not define "purchaser." Pennsylvania courts have declared the CPL is remedial, protecting consumers from deceptive practices or acts. Commonwealth, by Creamer v. Monumental Props., Inc. , 329 A.2d 812, 816 (Pa. 1974). To recover, a plaintiff must suffer an ascertainable loss resulting from an "unfair or deceptive act" and have made a "purchase . . . primarily for personal, family or household purposes." Valley Forge Towers S. Condo. Ass'n v. Ron-Ike Foam Insulators, Inc., 574 A.2d 641, 645 (Pa. Super. Ct. 1990).

Acknowledging he did not purchase the pedicle screws himself, Dr. Balderston contends he acted as his patients' "purchasing agent." But the District Court held Dr. Balderston brought suit not as the "legal representative" of his patients, but on his own behalf for personal losses. Balderston, 152 F. Supp. 2d at 778. Because his patients had "no interest in this litigation whatsoever," the District Court found Dr. Balderston had no private right of action. Id. at 779. Therefore, he had no standing under the CPL. Id.

Dr. Balderston contends the District Court applied an "unduly tight, artificial and narrow" construction of the statutory term "purchase," urging that it covers persons who are "necessarily and intimately involved" in purchasing transactions. Because the screws could be obtained only by

5

prescription, Dr. Balderston maintains he was the "decisionmaker" in the "purchase transactions," effectively making him a "purchaser." Yet Dr. Balderston does not deny that his patients purchased the screws.6

As noted, the CPL does not define "purchaser." But as we have observed:

> [T]he statute unambiguously permits only persons who have purchased or leased goods or services to sue. The

> private cause of action is also limited to unfair or
> deceptive methods, acts, or practices in the conduct of
> any "trade or commerce" . . . . Had the Pennsylvania
> legislature wanted to create a cause of action for those
> not involved in a sale or lease, it would have done so.
> The Pennsylvania Supreme Court has never addressed
> the issue before us. Its only reported decision on the
> CPL supports the conclusion that a private plaintiff
> must at least have purchased or leased goods or
> services.

Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (citations omitted).7 The District Court here relied on Katz. Dr. Balderston contends Katz is cabined to plaintiffs who lack commercial dealings with defendants and are not targeted by defendants' marketing plans. But we believe Katz supports the District Court's conclusion. The plaintiffs in Katz claimed to be "intended beneficiaries" of the purchased insurance, a closer relationship than Dr. Balderston's alleged relationship to the patients' purchases of the defendants' screws.

---

6. Dr. Balderston's Opening Brief stated, "Defendants mischaracterize the facts of plaintiff's complaint by claiming plaintiff purchased the pedicle screw as part of his medical practice . . . . The purchase is by the consumer, the patient. Plaintiff merely designates that screw for use by the consumer after obtaining informed consent prior to surgery. Neither plaintiff nor his practice are ever billed for the screw and do not pay for it."

7. In Katz, plaintiffs injured in an automobile accident sued the other driver's insurer, alleging a misrepresentation of coverage precipitated an inopportune settlement. We found the plaintiffs, who had not purchased the policies at issue, had no standing. Id.

6

The District Court also relied on Gemini Physical Therapy & Rehabilitation, Inc. v. State Farm Mutual Auto Insurance Co., 40 F.3d 63 (3d Cir. 1994). In Gemini , a physical therapist sued his patients' insurer for failing to pay his bills. We found the therapist had no standing under the CPL:

> The CPL contemplates as the protected class only those
> who purchase goods or services, not those who may
> receive a benefit from the purchase. Although Gemini
> may have been indirectly injured, it is not a purchaser
> or consumer of goods or services under the CPL and
> therefore has no private right of action under the
> statute. . . . Because the CPL focuses narrowly on the
> protection of consumers in the purchase of goods or
> services, we predict that the Pennsylvania Supreme
> Court would not infer an assignment of claims under
> the CPL.

Id. at 65-66 (citations omitted). We see no principled distinction here.

Dr. Balderston relies on two cases allowing plaintiffs acting in representative capacities to pursue claims under the CPL. In Valley Forge Towers, the court held a condominium corporation, acting in a representative capacity, could sue for damages under the CPL. 574 A.2d at 642-43. And in Kane & Son Profit Sharing Trust v. Marine Midland Bank, No. 95-7058, 1996 WL 325894 (E.D. Pa. June 13, 1996), the court declared a trust a "purchaser" under the CPL because it acted for members of an employee benefit plan. Id. at *8-11.

But the District Court rejected a comparison to Valley Forge or Kane:

> In both [cases] the court concluded that the plaintiffs had standing under the [CPL] because they purchased the goods and services at issue primarily for the personal, family or household purposes of the consumers for whom they were the legal representatives. In the instant case, [Dr. Balderston] obviously is not bringing this action in a representative capacity on behalf of his patients. Moreover, [Dr. Balderston] concedes that he was neither the

> purchaser nor the consumer of the pedicle screws. . . . While our research has revealed no case squarely on point, other courts have rejected [CPL] claims premised on agency theories similar to [Dr. Balderston's]. . . . [Dr. Balderston] did not act as the legal representative of his patients and is not pursuing this litigation on his patients' behalf.

Balderston, 152 F. Supp. 2d at 778-79. We agree. The District Court also cited DiLucido v. Terminix International, Inc., 676 A.2d 1237 (Pa. Super. Ct. 1996), where the court rejected a landlord's attempt to recover under the CPL for damages caused to her tenants. Id. at 1242. Like the plaintiff in DiLucido, Dr. Balderston seeks recovery under the statute only for his own business losses.

No Pennsylvania authority supports Dr. Balderston's analysis. We are satisfied that Dr. Balderston's claims are not cognizable under the CPL.8 Nor does Pennsylvania public policy mandate coverage. Balderston, 152 F. Supp. 2d at 779-80. Dr. Balderston is not a "purchaser" under the CPL. Therefore, he has no standing to sue.

IV.

As an alternative ground for dismissal, the District court found any "purchase" by Dr. Balderston was "primarily for business purposes as part of his surgical practice," not for "personal, family or household use," as required for the CPL. Id. at 778 n.5 (citing 73 Pa. Cons. Stat. Ann. S 201-9.2 (West 1993)). We review this conclusion of law de novo.

The District Court's analysis on this point was offered only in a footnote. Id. Although lacking elaboration, we agree with its conclusion. In construing claims under the CPL, Pennsylvania courts have distinguished purchases made for business reasons, which are not actionable, from those made for "personal, family or household use." E.g., Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001); Trackers Raceway, Inc. v. Comstock Agency, Inc., 583 A.2d

_____

8. Accord Robertson v. Allied Signal, Inc. , 914 F.2d 360, 378 (3d Cir. 1990) (federal courts with diversity jurisdiction must follow existing state law).

8

1193, 1197 (Pa. Super. Ct. 1990). Dr. Balderston suggests his purchase qualifies, because he "purchased" the screws for his patients' "personal use." But we have uncovered no Pennsylvania decision finding actionable a non-representative plaintiff's claim based on others'"personal uses." Dr. Balderston employed the screws only in his medical practice. His alleged losses were not "personal," but affected only his medical practice. Therefore, he lacks standing under the CPL.

V.

For the foregoing reasons we will affirm the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

9